J-S21039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL SCOTT HARLON, SR. | : | |
| | : | |
| Appellant | : | No. 1505 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 3, 2022
In the Court of Common Pleas of Snyder County Criminal Division at
No(s): CP-55-CR-0000449-2019

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED JULY 13, 2023**

Michael Scott Harlon, Sr. (Harlon) appeals from the judgment of sentence entered in the Court of Common Pleas of Snyder County (trial court) following his jury conviction of theft by unlawful taking and receiving stolen property (RSP).[1] Harlon challenges the sufficiency of the evidence supporting his conviction. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3921(a) and 3925(a). The trial court granted Harlon's motion for judgment of acquittal for conspiracy to commit burglary and found him not guilty of the summary offense of criminal mischief. *See* 18 Pa.C.S. §§ 903(a)(1) and 3304(a)(5). The jury found Harlon not guilty of burglary. *See* 18 Pa.C.S. § 3502(a)(2).

**I.**

This case stems from Harlon's theft of approximately $38,000 in cash from the residence of Daniel Troup (Troup) in April 2015. Troup owns multiple rental properties and Harlon's then-girlfriend, Crystal Hook, was one of his tenants.

The Commonwealth called five witnesses at Harlon's January 31, 2022 trial: Troup; Pennsylvania State Police Corporal Garrett Marvich; Lori Shull; Linda Buttorff; and Harlon's son, Michael Harlon, Jr. (Harlon Jr.). Ms. Hook was subpoenaed to testify but did not appear. Harlon elected not to testify and the defense called no witnesses.

Troup testified that when he arrived at his home after work on April 9, 2015, he became suspicious that someone had entered it upon observing that a hatchet he stored near his back door for wood chopping was laying on his living room floor. Troup checked on the fireproof safe where he stored cash and it had been broken open and bank bags containing about $38,000 in cash were missing from the safe. (**See** N.T. Trial, 1/31/22, at 30-32).

Troup went on to testify that he owns rental properties and that Ms. Hook had rented a mobile home located within 15 yards of his house since the fall of 2014. Ms. Hook paid her rent primarily in cash and Harlon was living with her at the time of the incident. Troup testified that he had served Ms. Hook with an eviction notice on April 1, 2015, because she had not paid most of her rent from the previous month. Troup relayed that his kitchen window

had been damaged during the incident and he believed the intruder likely gained entry through the back door.

Corporal Garrett Marvich testified that he interviewed Harlon after the theft and Harlon denied any involvement in the incident. However, Harlon indicated that Harlon Jr. may have been involved because, shortly after the theft, he showed up with a new car and several new baseball jerseys. (*See* N.T. Trial, at 55). Harlon acknowledged that he recently bought a motorcycle and explained that he purchased it with money from Ms. Hook and his mother's boyfriend.

Ms. Shull from Mifflinburg Auto Sales testified that on April 17, 2015, Harlon and Harlon Jr. purchased a vehicle for $1,650. The title lists Harlon as the first purchaser and Harlon Jr. as the second purchaser. (*See id.* at 68). On cross-examination, Ms. Shull stated that she was unaware of whether it was a cash purchase. (*See id.* at 69). Ms. Buttorff of Buttorff's Sales and Service testified that on April 11, 2015, Harlon paid $2,799.98 in cash for a motorcycle and related fees. (*See id.* at 72).

Harlon Jr. testified that during 2015, he was living at his grandmother's residence and occasionally stayed with his father. When asked if he was aware of the April 9, 2015 incident at Troup's home, he responded, "No." (*Id.* at 75). The Commonwealth then asked Harlon Jr. to read the statement he provided to police after the theft, stating:

> My dad picked me up from my grams in Lewistown on April 15, 2015. I came down to his place in Port Trevorton. I was

sitting playing XBox when knocks came to the door. I heard it was police and I just came home from jail so I knew that they weren't there for me. Then my dad came out with a blue bank envelope full of cash and told me if I help him get away with it, I can get a car and new stuff so I did that.

(*Id.* at 76).

He acknowledged that he purchased a car on April 17, 2015, but repeatedly indicated that his memory was vague because he was taking a lot of drugs at that time. Harlon Jr. stated that he paid for most of the car himself and that his father provided him with only some of the funds. (*See id.* at 78, 82). Harlon Jr. then testified that he had pled guilty to criminal conspiracy to commit RSP as result of his participation in this matter, but that he was dissatisfied with the sentence he received. He advised that his testimony in this case was not part of his plea agreement and that he was testifying under subpoena.

On cross-examination, Harlon Jr. stated that when he provided the written statement to police, he hoped to receive favorable treatment by the Commonwealth. Harlon Jr. testified that he had just been released from jail around the time of the incident and that he never talked to his father about committing any crime. (*See id.* at 92). Harlon Jr. recounted that Harlon did give him blue bank bags with cash in it, but averred that he did not know the amount of cash or where it came from and he did not ask. He indicated that when his father gave the bags to him, he ran into the woods and hid them. (*See id.* at 93).

The jury found Harlon guilty of theft by unlawful taking and RSP. On June 21, 2022, the trial court sentenced Harlon to a term of 3 to 7 years' incarceration for each offense, to be served concurrently. Harlon filed a post-sentence motion challenging the sufficiency of the evidence and arguing that the theft and RSP offenses merged for sentencing purposes. The trial court entered an order on October 3, 2022, denying Harlon's sufficiency claim but ruling in his favor on the merger issue and modifying its sentencing order accordingly. Harlon timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

On appeal, Harlon contends that the evidence presented at trial was insufficient to support his theft by unlawful taking and RSP conviction.[2] Harlon

---

[2]

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Hummel*, 283 A.3d 839, 846 (Pa. Super. 2022) (citations omitted).

maintains the Commonwealth failed to show that the money he allegedly gave to Harlon Jr. was solen from the Troup residence.  (**See** Harlon's Brief, at 13-17).  Harlon points to Harlon Jr.'s testimony at trial that he did not know where the money in the bank bags came from or the amount contained therein.  Harlon also maintains that the fact that he resided with Ms. Hook, who had been evicted from her residence, does not establish that he lacked funds to make new purchases.  (**See id.**).

A defendant is guilty of the offense of theft by unlawful taking if he "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."  18 Pa.C.S. § 3921(a).  Similarly, an individual is guilty of RSP if he "intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."  18 Pa.C.S. § 3925(a).

In this case, the record reflects that the bank bags containing $38,000 in cash were taken from a fireproof safe in Troup's home.  Harlon resided with Ms. Hook on Troup's adjacent rental property, Hook paid rent to Troup mostly in cash, and Troup served her with an eviction notice days before the theft.  Harlon purchased a car and a motorcycle shortly after the incident and paid for the motorcycle in cash.  During his interview with Corporal Marvich, Harlon denied any involvement in the incident but implicated his son who had recently made new large purchases.  Moreover, Harlon Jr. indicated that his father had

given him bank bags full of cash and promised to reward him if he helped him "get away with it." (N.T. Trial, at 76). Although Harlon Jr. claimed that he did not know the amount of the cash or where it came from, he appeared to be willfully ignorant and "didn't ask any questions." (*Id.* at 94). Finally, Harlon never provided an alternative source of where the money was obtained to make the above described purchases.

Based on the foregoing and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *see Hummel*, *supra* at 846, we conclude the evidence was legally sufficient to establish that Harlon committed the crimes of theft by unlawful taking and RSP. The jury as fact-finder could reasonably infer from Harlon Jr.'s testimony, when considered in conjunction with the surrounding circumstances including Harlon's close proximity to Troup's residence, the eviction notice delivered to Ms. Hook and the relatively large purchases he made in the days following the theft, that Harlon took Troup's cash from the safe and spent it on items for himself and his son. Accordingly, we discern no merit to Harlon's sufficiency claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/13/2023